CRENSHAW v. JULIAN.

1. Defendants in execution are not wholly estopped from denying the title of the purchaser to lands sold by the sheriff as their property under such execution. For while they may not show a paramount title in some third person, they may dispute the validity of the judgment and execution, and of the sale and conveyance.

2. Other grounds than those raised by exceptions will be considered in support of the Circuit decree.

3. A confession of judgment by a married woman in 1867 was void, but having been revived by default in 1876 and again in 1883, the validity of the judgment was thereby established and is now *res judicata*.

4. Since the constitution of 1868 the doctrine of estoppel applies to a married woman, notwithstanding her coverture—certainly as to acts done prior to the act of 1882.

5. In action by the purchaser to recover land bought at sheriff's sale, the defendant in execution, as whose property the land was sold, cannot defeat the action by showing that she had no leviable interest, and that the title was in her trustee. Only the trustee could interpose such defence.

6. Case remanded with leave to have the trustee made a party.

Before HUDSON, J., Pickens, September, 1886.

This was an action by Jesse Crenshaw against Sarah Julian and George W. Julian, her husband, commenced in January, 1886. The opinion states the case. It does not appear in the Brief what was the consideration of the debt for which the judgment was confessed.

*Mr. James P. Carey*, for appellant.

*Mr. M. F. Ansel*, contra.

March 14, 1887.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   This was an action to recover possession of a tract of land bought by plaintiff at sheriff's sale under an execution against the defendants.   The facts as found by the referee, to whom it was referred "to take and report the testimony," together with his "conclusions of fact thereon," are substantially as follows: On August 29, 1860, Jeremiah Looper, sr., executed a deed to his son, Jeremiah Looper, jr., transferring a slave and a certain sum of money to the said Jeremiah Looper, jr., in trust "for the sole and separate use, behoof, and benefit of my daughter, the said Sarah Julian, during her natural life, and at her death to the sole and separate use, behoof, and benefit of the heirs of her body *per stirpes"*— empowering the trustee "to pay any debts heretofore contracted, invest any funds which he may have in hand, sell any property, and reinvest the proceeds in other property so entrusted to his charge in any way or manner which his wisdom may dictate for the benefit and good of the said Sarah Julian or her family; provided she consents to the said payments, sales, investments, or outlay."   With a portion of the trust fund the trustee bought the land in dispute from one Thomas Looper and put the defendants in possession very soon after the execution of the trust deed, where they have ever since remained, "receiving and using the rents and profits thereof, and holding out to the world that the land belonged to them."   Thomas Looper, however, never made any deed for the land, either to the trustee or any one else.

Some six or seven years after the defendants went into possession of the land, to wit, on May 13, 1867, they confessed judg-

ment to the plaintiff, though the defendant Sarah was then, and still is, a married woman, and execution thereon was duly lodged in the sheriff's office on May 17, 1867. On March 6, 1876, an order was obtained, by default, after summons duly served on both of the defendants, to renew said execution; and on June 8, 1883, a like order for renewal was obtained after like service of summons on defendants, and under the last execution the land in question was duly advertised and sold by the sheriff, who conveyed the same to the plaintiff before the commencement of this action. The referee also found that the defendants had never paid the taxes on the land, and that the trustee "has represented the defendant, Sarah Julian, in several legal transactions, and looked after and taken care of her property for her." It further appeared from the testimony of the plaintiff that he had notice of the trust deed before the confession of judgment was taken, and that it was for that reason he had Mrs. Julian to sign the judgment.

The Circuit Judge having heard the case "upon the pleadings, proofs, and report of the special referee," held first that the judgment was originally void as to the defendant Sarah by reason of her coverture, and that he doubted whether the renewals of the judgment would bind her, as she is still a married woman. But conceding that she is thereby estopped from disputing the validity of the judgment, he held that she had no leviable interest in the land, that the legal title was in the trustee, and the possession held by her is the possession of the trustee. He, therefore, rendered judgment dismissing the complaint. From this judgment plaintiff appeals on the several grounds set out in the record, which need not be repeated here, as we think it will be sufficient to consider only the material questions arising on the record.

The first point is that "the defendants are estopped to dispute plaintiff's title to the land in question." To the proposition stated in so broad a form we cannot yield our full assent. For while the cases cited by appellant's counsel (*McEllwee* v. *Benson*, 2 *Rich.*, 26; *Sumner* v. *Palmer*, 10 *Rich.*, 38; and *Stuckey* v. *Crosswell*, 12 *Rich.*, 273), do establish the doctrine that in an action by the purchaser at sheriff's sale to recover pos-

session from the defendant in execution, the defendant cannot defend himself *by showing an outstanding paramount title in a third person,* they do not go to the extent of forbidding a defendant from disputing such title upon *any* ground. The reason of the rule established by these cases is that the sheriff, in making a sale of all the defendant's right, title, and interest under execution, acts as the agent of defendant. The defendant, in fact, makes the conveyance through the agency of the sheriff, and hence the law will not permit him to say, in defence of his possession, that there is a better title in some one else than that which he has conveyed to the purchaser at sheriff's sale through his agent, the sheriff.

But to give rise to the operation of this rule, it is very obvious that the plaintiff must first show a valid sale and conveyance by the sheriff to him. And as a valid judgment and execution is essentially necessary to invest the sheriff with legal authority to make the sale and conveyance, it is always permissible for a defendant in such an action to show, if he can, that the judgment or execution under which the sheriff undertook to make the sale was so fatally defective as to be insufficient to invest the sheriff with power to do so. For until it is made to appear that there has been a legal and valid sale and conveyance of the right, title, and interest of the defendant, it will not appear that such right, title, and interest has passed to the plaintiff, and therefore there will be no room for the operation of the estoppel whereby the defendant is prohibited from disputing his own title by undertaking to show that there is a better title in some one else. It seems to us, therefore, that the question of the validity of the judgment under which the sheriff undertook to make the sale is not only an essential, but a vital question in the case, as it is now presented.

It is true that the Circuit Judge conceded the validity of the judgment, though entertaining grave doubts on the point, and that there is no exception to that part of his decree. But under the well settled and wholesome rule of this court the decree of a Circuit Judge may be affirmed, even though the ground upon which he rests his conclusion cannot be sustained, provided there is any other ground sufficient for the purpose. And as

it is quite clear that the invalidity of the judgment would furnish a sufficient ground for the affirmance of the decree, we think it necessary to consider the question, especially as we do not feel satisfied that the conclusion reached by Judge Hudson can be safely rested upon the ground upon which he placed it.

We agree with the Circuit Judge that the judgment was originally void as to Sarah Julian, if that question were now open to our consideration. It was taken prior to the adoption of the constitution, when Mrs. Julian labored under all the disabilities incident to her condition as a married woman, at common law, and she certainly had no power then to bind herself or her estate by a confession of judgment. But granting all this, the material inquiry still remains whether the question of the validity of the judgment is now open for consideration. Has it not already been adjudged—is it not now *res adjudicata ?* It seems to us that it has been, and is now beyond our reach. When a question has once been determined by a court of competent jurisdiction in a proper proceeding for the purpose, with the proper parties before it, such question cannot afterwards be mooted between the same parties, however erroneous such determination may have been. This doctrine is so well settled, both upon reason and authority, that it is wholly unnecessary to cite authority to sustain it.

The practical inquiry, then, is whether this question has been so determined. We think it has. When these defendants were summoned to show cause why the judgment should not be revived and a new execution issued, that was the proper time to raise the question of the validity of the judgment, and though not in fact formally raised, must necessarily have been then adjudged ; for until it was determined there was a valid judgment, of course there could properly be no order that the plaintiff should have execution thereof. But it is unnecessary to pursue the subject, as the question has been conclusively determined in several recent cases in this State. *Jackson* v. *Patrick,* 10 *S. C.,* 197 ; *McNair* v. *Ingraham,* 21 *Id.,* 70 ; and *Freer* v. *Tupper, Ibid.,* 75.

It will be observed that this is not a question whether something that was absolutely void could afterwards be validated. If it were, then the argument of the counsel for respondent would have much force. That, however, was a question which could,

and should, have been made in response to the summons to show cause why the execution should not be renewed. But the inquiry here is, whether that question has not already been adjudicated between these same parties, and is not now *res adjudicata ;* and, as we have said, we think it is, and, therefore, cannot now be reopened, even though such adjudication may have been wholly erroneous. *Chalmers* v. *Turnipseed,* 21 *S. C.*, 126—where it was held that an assignment of homestead, though clearly illegal and erroneous, not resisted and not appealed from at the time, could not afterwards be assailed as a nullity by any of the parties to the proceeding.

It may be urged, as has been intimated by the Circuit Judge, that, inasmuch as Mrs. Julian was, and still is, a married woman, the doctrine of estoppel could not be applied to her. However, that may have been prior to the adoption of the present constitution, which we are not now called upon to consider, it seems to us that since the constitution of 1868, and the acts passed in pursuance thereof, have to so great an extent removed the disabilities arising from coverture, and as the law stood at the time when the transactions under consideration took place, at least at the time when the execution was first renewed, when the question could and ought to have been made, a married woman was invested with unlimited power to contract and be contracted with, and was practically made *sui juris*, there can be no doubt that the doctrine of estoppel would apply to her, notwithstanding her coverture.

If, then, the judgment under which the land was sold was a valid judgment, or bound to be so regarded in this proceeding, and the sale and conveyance thereunder to the plaintiff were regular and legal, as to which there does not seem to be any question, the only remaining inquiry is whether the defendants could, in this proceeding, interpose the defence that the legal title was in the trustee, and that they had no leviable interest in the land. The cases cited in the first branch of this opinion show that they could not ; for here was an action by a purchaser at sheriff's sale against the defendants in execution to recover possession of the land, and those cases hold that in such a case it is not competent for the defendants to defend themselves by showing an outstanding paramount title in some third person, or by dis-

puting their own title, which has been transferred by them, through their agent, the sheriff, to the plaintiff.

The case of *McEllwee* v. *Benson, supra,* was not unlike the present case.  There the defendant offered in evidence a deed by which the land had been conveyed to a trustee for the use of the defendant's wife for life, and the jury were charged that the plaintiff was, notwithstanding, entitled to recover, the sheriff's deed operating as an estoppel, which precluded the defendant from showing title in another.  But the jury, notwithstanding this instruction, gave a verdict for defendant.  In delivering the opinion of the court, O'Neall, J., said: "It may be, and I think it very possible, that if the trustee of the wife be made a party to the record, as is directed in *Crosby* v. *Floyd* (2 *Bail.*, 116), he may defeat this recovery; and a feeling of that kind has made me struggle to sustain the verdict.  But it is too clear to be questioned that this defendant cannot set up a paramount title in another to defeat the purchaser of his own title."  The same doctrine was applied in *Stuckey* v. *Crosswell, supra,* where the defendant undertook to set up as a defence a deed made to him as trustee for his two sons; and the same principle was acted upon in *Sumner* v. *Palmer, supra.*

We think, therefore, that the Circuit Judge erred in holding that the defendants could defend themselves by showing that the legal title was in the trustee, or that the defendant, Sarah, had no leviable interest.  The question whether the legal title was in the trustee is not properly before the court for the want of a proper party to raise it, and hence we do not propose to indicate any opinion as to that question; and the defendants have no more right to question the plaintiff's title through the sheriff's deed than if they had, themselves, directly made the conveyance.  The case must, therefore, go back for a new trial, with leave to the defendants, if they so desire, to make the trustee a party to the record, as is indicated in *Crosby* v. *Floyd, supra,* so that he may have the opportunity of establishing his alleged paramount title for the benefit of his *cestui que trust.*

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that

court for a new trial, with leave to amend as indicated in this opinion.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON concurred in the result.